## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HEATHER LINARDOS,
   *Plaintiff,*

  v.

MANISHA JUTHANI ET. AL,
   *Defendants.*

No. 3:24-cv-962 (VAB)

### RULING AND ORDER ON MOTION TO DISMISS

  Heather Linardos ("Plaintiff") has brought suit under Section 1983 and state law against Dr. Manisha Juthani, Ellen Blashinski, Delores Greenlee, Kristina Plyler, (the "Individual Defendants") and the State of Connecticut Department of Public Health ("DPH") (collectively, "Defendants") for First Amendment Retaliation ("Count One"), due process and equal protection violations under the Fourteenth Amendment ("Count Two"), Family Medical Leave Act ("FMLA") interference and retaliation claims ("Count Three"), violations of Connecticut General Statutes Section 31-51q ("Count Four"), defamation ("Count Five"), and false light invasion of privacy ("Count Six"). Compl., ECF No. 1 (May 30, 2024) ("Compl.").

  The Defendants have filed a motion to dismiss Counts One—in its entirety as to DPH, but only insofar as it relies on the Connecticut Constitution as to the Individual Defendants—Two, Four, Five and Six against all Defendants, and Count Three against Ms. Plyler. Mot. to Dismiss, ECF No. 19 (Aug. 8, 2024) ("Mot. to Dismiss").

  For the following reasons, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

  The motion to dismiss Count Three against Ms. Plyler is **DENIED**.

The motion to dismiss Counts Two, Four, Five and Six as to all Defendants, and Count One in part is **GRANTED**.

Ms. Linardos's claims against DPH in Counts One, Two, Five, and Six are **DISMISSED** without leave to amend but without prejudice for lack of jurisdiction.

Ms. Linardos's claims against the individual Defendants in Counts Two, Five and Six are **DISMISSED** without leave to amend as to stigma-plus, defamation, or false light invasion of privacy claims related to the March 16, 2022 letter from Ms. Plyler, but with leave to amend as to any other claims.

Ms. Linardos's Connecticut constitution claims in Count One and Section 31-51q claims in Count Four are **DISMISSED** without leave to amend for lack of jurisdiction, but without prejudice to bringing the claims in state court.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, consistent with this Ruling and Order, a motion for leave to file an Amended Complaint must be filed by **April 25, 2025.** If a motion for leave to file an Amended Complaint is not filed by **April 25, 2025,** the current Complaint, consistent with this Ruling and Order, shall be the operative pleading for this case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

In January 1996, Ms. Linardos allegedly began working with DPH in human immunodeficiency virus ("HIV") surveillance and data security. Compl. ¶¶ 12, 13.

DPH allegedly works with the United States Center for Disease Control and Prevention ("CDC") to prevent HIV infection, and DPH's HIV Surveillance Program is allegedly "[a]n integral part of HIV prevention." *Id.* ¶ 18, 19.

Ms. Linardos allegedly had responsibility for the DPH's HIV Surveillance Program. *Id.* ¶ 21. In that role, Ms. Linardos allegedly "serve[d] as the steward of [confidential patient health] data, [and] ensure[d] compliance with state and federal data security and confidentiality guidelines, regulations and statutes." *Id.* ¶ 23.

Starting in 2019, Ms. Linardos allegedly received "FMLA caregiver protection" that allowed her to take up to eight hours a week of intermittent leave to care for her elderly mother. *Id.* ¶ 80–81 (emphasis removed). She allegedly regularly received approval for FMLA leave until December 2022. *Id.* ¶ 82.

In 2021, Ms. Linardos allegedly advised Ms. Blashinski, the Public Health Branch Chief, and Ms. Greenlee, the Public Health Section Chief, "regarding mandatory patient data security procedures[,]" but Ms. Blashinski and Ms. Greenlee allegedly "refused to adopt or apply these confidentiality laws, regulations, practices and policies." *Id.* ¶ 32. Ms. Linardos alleges that, at that time, "DPH was deficient in establishing appropriate public health data security protocols." *Id.* ¶ 33.

On March 1, 2022, Ms. Linardos allegedly completed "the revised Connecticut Department of Health--Data Security and Confidentiality Policies and Procedures for TB, HIV, STD and Viral Hepatitis Programs" (the "DSC"), and shared the DSC "with all contributors, supervisors and managers, including" Dr. Juthani, the Commissioner of DPH, Ms. Blashinski, and Ms. Greenlee." *Id.* ¶ 35.

On March 2, 2022, Ms. Linardos alleges that Mr. Muhktar Mohamed, an epidemiologist at the DPH, requested that he provide her with "unrestricted access to all confidential HIV patient data." *Id.* ¶ 36. Ms. Linardos alleges that Mr. Mohamed "had a history of unorthodox conduct and mishandling of protected and confidential health information." *Id.* ¶ 37. Ms.

Linardos allegedly notified Mr. Mohamed, and later Ms. Blashinski and Ms. Greenlee, that

providing access violated state law and DPH policies, and allegedly informed Ms. Blashinski and

Ms. Greenlee that Mr. Mohamed, "despite training, either misrepresented or did not understand

his need for the data." *Id.* ¶¶ 38–40.

Ms. Blashinski allegedly ordered Ms. Linardos to provide confidential HIV patient

information to Mr. Mohamed. Ms. Linardos allegedly delayed doing so and reported the matter

to DPH's legal and human resources departments. *Id.* ¶¶ 40, 41, 43.

Ms. Linardos allegedly "then widely and publicly complained about this violation of HIV

patient confidentiality to numerous local public health officials and the CDC," and "notified

several local public health officials and the HIV Surveillance CDC Project Officer about the

violation of HIV patient confidentiality." *Id.* ¶ 44, 46.

On May 25, 2022, Ms. Linardos allegedly sent an e-mail to Ms. Blashinski and Ms.

Greenlee informing them that Mr. Mohamed's request "constituted a significant data security

breach[,]" but did not receive a response. *Id.* ¶ 47.

On March 9, 2022, Ms. Linardos allegedly sent an e-mail to Marianne Buchelli, "the Co-

Principle Investigator on the HIV Surveillance and Prevention federal grant who oversaw the

HIV Prevention Program," stating:

> I've wasted this entire week defending against Section managers [Blashinski/Greenlee]
> re: Mukhtar's demand for access to all HIV patient records. He is flatly lying to managers
> just to get his way and unfortunately, managers are supporting him. The details of this
> matter has been referred to DPH legal, CDC, 1199 Union and potentially the Office of
> Ethics. (Legal Dept. and Union will advise). Union Rep since I was threatened by
> managers to grant access or else I will receive a poor service rating and Ethics because
> forcing me to violate state data privacy regulations and a federally certified DSC [Data
> Security Confidentiality] policy seems like an ethics issue. If Legal sides with managers,
> I will grant access after Legal provides an exoneration letter (described below) on my
> behalf. Just so you're aware, Union Rep informed me that Ellen and Delores may put me
> on administrative leave for defying their directive to give Mukhtar the access he wants,
> "because he says he needs it." That would be incredibly, incredibly bad for

4

Surveillance…As Co-Pl on PS18-1802, this concerns you. I'd appreciate your support on my position. Several staff have offered to provide statements that Muhtar's demands are inappropriate and Ellen and Delores's directive is unreasonable. …I'm meeting with CDC Data Security SME's tomorrow at 10 am to give them an update. Thank you Mukhtar, I won't forget this.

*Id.* ¶ 51

Ms. Buchelli allegedly forwarded this e-mail to Ms. Blashinski and Ms. Greenlee without Ms. Linardos's knowledge. *Id.* ¶ 52.

On March 10, 2022, Olina Morales, a DPH staff attorney, allegedly directed Ms. Linardos to follow Ms. Blashinski and Ms. Greenlee's order and provide Mr. Mohamed with access to the data. *Id.* ¶ 53. Ms. Linardos allegedly informed Ms. Morales "and defendants that she would notify CDC of the improper breach of HIV patient confidentiality." *Id.* ¶ 56.

On March 16, 2022, Ms. Plyler allegedly sent a letter to Ms. Linardos informing her that she had been placed "on administrative leave, forced referral to their employee assistance program" ("EAP"), and required her to "provide evidence of [her] fitness to resume work activities certifying that [she is] not a threat to [herself] or others" before she could return to work. *Id.* ¶¶ 66–67. Ms. Linardos allegedly had been accused of threatening Ms. Mohamed "based on her March 9, 2022 email to [Ms.] Buchelli where she stated 'thanks a lot Muhtar [sic].'" *Id.* ¶ 57. Ms. Linardos alleges that "Defendants widely published this false accusation that [she] was a threat to herself or others." *Id.* ¶ 68.

On March 17, 2022, Ms. Linardos alleges that "under duress and as ordered by defendants, [she] signed an 'Authorization to Release Personal Health Information' . . . allowing Defendants protected confidential[] health information," that she alleges violated federal health regulations. *Id.* ¶ 69.

On March 31, 2022, Ms. Linardos allegedly submitted an "Employee Fitness for Duty Certification" for leave commencing on March 17, 2022 and ending March 31, 2022 with a medical provider's clearance for her to resume working. *Id.* ¶ 70–72.

On August 1, 2022, Mr. Mohamed allegedly sent an e-mail to the CDC requesting access to the data and copied Ms. Linardos and Ms. Greenlee. *Id.* ¶ 58. Ms. Linardos allegedly asked Ms. Greenlee to inform Mr. Mohamed "that he should not be reaching out to CDC on behalf of HIV Surveillance without consulting with" her, and Ms. Greenlee informed Ms. Linardos that she should not communicate with the CDC without Ms. Greenlee's permission. *Id.* ¶¶ 59, 60. Ms. Linardos allegedly told Ms. Greenlee "that she was being bullied, attacked, embarrassed and that Mohamed was deceitful and that she would continue to report Blashinski and Greenlee's lack of leadership." *Id.* ¶ 61.

On August 2, 2022, a human resources worker informed Ms. Linardos that her leave was not approved under FMLA. *Id.* ¶ 75–79.

On August 3, 2022, Ms. Greenlee allegedly issued Ms. Linardos a letter of reprimand "for 'failure to follow your managers' directives' and for 'unprofessional workplace conduct' for her complaining about defendants' demand that she provide unauthorized employee access to HIV patient confidential data." *Id.* ¶ 62. The letter of reprimand also indicated that Ms. Linardos's March 9, 2022 e-mail "disparaged managers and 'contained a statement that caused alarm to your colleague and managers.'" *Id.* ¶ 63. It further stated "that if 'any additional incidents of this kind will be cause for more severe disciplinary action, up to and including, suspension and dismissal.'" *Id.* ¶ 64.

On December 19, 2022, Ms. Greenlee allegedly met with Ms. Linardos and informed her that she was being placed on a Performance Improvement Plan ("PIP") requiring her to work "a

two-day remote and three days office work week,[1] check in daily with [Ms.] Greenlee, share her schedule beginning each week and check in and out with [Ms.] Greenlee daily" because she "was not communicating her location to her subordinates." *Id.* ¶¶ 84–85, 96. Ms. Linardos alleges that the PIP required her to "notify her subordinates when she is out," although, allegedly, Ms. Greenlee was "responsible for notifying [Ms. Linardos's] direct reports if [Ms. Linardos] calls out sick or uses FMLA." *Id.* ¶ 94. Ms. Linardos alleges that "[t]he allegations in the PIP that Plaintiff was not attending work and had taken unauthorized leave were false" *Id.* ¶ 98.

Ms. Linardos alleges that, at the meeting, Ms. Greenlee "confirmed that the PIP measures were corrective action for Plaintiff's complaints concerning HIV confidentiality breaches and her unscheduled FMLA caregiver approved leave" to care for her elderly mother. *Id.* ¶ 89; *see also id.* ¶¶ 85, 98. Ms. Linardos also alleges that her "time records in 2022 showed that she used FMLA approved care giver leave for over 80% of her unscheduled leave." *Id.* ¶ 90.

On the same date of her meeting regarding the PIP, Ms. Linardos allegedly "complained to [Ms.] Plyler that the PIP was based on false performance evaluations by [Ms.] Greenlee, false claims of attendance, and were retaliation for her using FMLA care giver leave." *Id.* ¶ 100.

On February 22, 2023, Ms. Greenlee allegedly informed Ms. Linardos that she was failing to meet the deficiencies in her PIP, and allegedly noted that "[Ms. Linardos] 'partially met' the admonition to 'refrain from sending inappropriate, and unprofessional emails to colleagues, co-workers or supervisors.'" *Id.* ¶¶ 101–03.

On March 9, 2023, Ms. Greenlee allegedly reviewed Ms. Linardos's PIP and found that she met all areas of the PIP. *Id.* ¶ 104.

---

[1] Elsewhere in the Complaint, Ms. Linardos alleges that she was required to "work in the office four days a week" under the PIP. Compl. ¶ 85

On April 6, 2023, Ms. Greenlee allegedly submitted a review of Ms. Linardos's PIP asking her to "not email or call [her] co-workers, staff members or supervisors on work related issues unless it is an emergency or has high importance" when she uses her FMLA leave. *Id.* ¶ 105

On May 10, 2023, Ms. Greenlee allegedly reviewed Ms. Linardos's PIP and found that she met all areas of the PIP. *Id.* ¶ 106.

On May 17, 2023, Ms. Linardos allegedly received a letter from Ms. Plyler informing her that she was suspended without pay for one day because of "her complaint of improper activity by [Mr.] Mohamed the previous August 1, 2022." *Id.* ¶ 107.

On that same date, Ms. Greenlee allegedly "issued a[n] 'official letter of counseling' to [Ms. Linardos] that falsely claimed she sent an email to other DPH personnel that [Ms. Linardos] violated State of CT Acceptable Use of State Systems Policy" and allegedly "[Ms.] Greenlee also noted that '[Ms. Linardos's] email questioned the validity of the performance improvement plan issued by management.'" *Id.* ¶ 108.

On June 1, 2023, Ms. Greenlee allegedly reviewed Ms. Linardos's PIP and noted that Ms. Linardos failed to check in about her absence on May 22, 2023. *Id.* ¶ 109. Ms. Linardos claims that "[a]s a result of this false allegation of 'failing to check in' defendants falsely charged [her] with being absent without leave and forced her to use unpaid leave." *Id.* ¶ 110.

On June 9, 2023, Ms. Linardos allegedly complained to Ms. Greenlee and Lynn Sosa, Infectious Diseases Section Director, about the "docking of her pay for May 22, 2023," and other complaints related to her PIP, including that the PIP was "arbitrary and abusive." *Id.* ¶ 111.

While Ms. Linardos's PIP was allegedly scheduled to end on June 19, 2023, she alleges that, on June 20, 2023 it "was extended by Defendants, without justification," until September 19, 2023. *Id.* ¶¶ 97, 112.

On June 26, 2023, Ms. Greenlee allegedly reviewed Ms. Linardos's PIP and noted that Ms. Linardos had "serious work performance problems." *Id.* ¶ 113.

On September 7, 2023, Ms. Linardos's PIP was allegedly extended again, allegedly because Ms. Greenlee was "was 'continuing to monitor' and criticizing the 'tone' of an August 16, 2023 email [Ms. Linardos] sent to one of her direct reports[.]" *Id.* ¶ 115.

On September 13, 2023, Ms. Linardos allegedly received a "service rating" of "fair" and was informed that "all the PIP points had been met." *Id.* ¶ 116.

On that same date, Ms. Linardos allegedly "notified Defendants that her service ratings [and the] continuation of the PIP and suspension . . . was inaccurate and unfair." *Id.* ¶ 119.

On September 14, 2024, Ms. Linardos allegedly was removed from her position as HIV Surveillance Program Coordinator and Section Data Security and Confidentiality Manager, and was "assigned . . . to a menial position in the Epidemiology program." *Id.* ¶ 120.

On September 29, 2023, Ms. Linardos allegedly received an "unsatisfactory" performance evaluation from Ms. Greenlee. *Id.* ¶ 118. In prior years, Ms. Linardos allegedly had received performance ratings of "Fair" on September 9, 2022, "Good" on September 29, 2021 and "Excellent" on September 24, 2020.  *Id.* ¶¶ 117–18.

Ms. Linardos alleges that her "complaints to [Dr.] Juthani of the aforementioned harassment, workplace hostility, abuse of FMLA and retaliation were ignored." *Id.* ¶ 122.

### B.  Procedural History

On May 30, 2024, Ms. Linardos filed her Complaint. Compl.

On August 8, 2024, the DHS filed the motion to dismiss and argued that claims against the Individual Defendants fail because they were not properly served. Mot. to Dismiss.

On August 28, 2024, Ms. Linardos filed proof of service on the Individual Defendants. Notice, ECF No. 22. That same day, the Defendants filed a motion to withdraw the portion of their motion to dismiss based on insufficient service. Mot. to Withdraw, ECF No. 23.

On September 16, 2024, the Individual Defendants joined the DHS's motion to dismiss. Notice, ECF No. 27.

On September 23, 2024, Ms. Linardos filed her opposition to the Defendants' motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 29 ("Opp'n")

On October 2, 2024, the Defendants filed a reply. Reply, ECF No. 33 ("Reply").

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

The Defendants have moved to dismiss Ms. Linardos's federal claims in Count One against DPH, Counts Two and Four against all Defendants, and Count Three against Ms. Plyler.

The Defendants argue that any claim under Section 1983 for federal constitutional violations in Counts One and Two may not be asserted against DPH because it is a state agency,

and that Ms. Linardos may not seek injunctive and declaratory relief under the FMLA or based on alleged constitutional violations because she has not sued any of the individual Defendants in their individual capacities. In addition, they argue that Ms. Linardos fails to state a claim for procedural due process or equal protection violations under the Fourteenth Amendment in Count Two. The Defendants also argue that, in Count Three, any FMLA claim against Ms. Plyler fails because she is not an employer under the FMLA.

As for the state law claims, the Defendants allege that there is no cause of action for a First Amendment claim under the Connecticut Constitution in Count One. They further argue that claims based on an alleged violation of Connecticut General Statute § 31-5lq in Count Four fails because the Individual Defendants may not be held liable under this statute, and DPH, as a state agency, may not be sued under this statute in federal court. Finally, they argue that Counts Five and Six fail as to DPH, because tort claims may not be brought against state agencies.

The Court will address each argument in turn, beginning with the arguments related to Ms. Linardos's federal claims.

### A.  The Relief Sought Under Section 1983

In Counts One and Two, Ms. Linardos brings claims under Section 1983 against DPH, which she acknowledges is "an agency of the State of Connecticut," and the Individual Defendants in their individual capacities, and seeks damages and injunctive and declaratory relief against the Defendants. *See* Compl. ¶¶ 6–10, 137, 151, 161, 163.

In suits for monetary relief, "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)). In suits for injunctive relief against a state agency under Section 1983, a plaintiff must "follow the requirement,

established in *Ex Parte Young*," to "name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (dismissing claims for injunctive relief brought by a state DOC employee against the DOC); *see also Alden v. Maine*, 527 U.S. 706, 756 (1999) (recognizing that only arms of the State can assert the State's immunity).

A state agency, acting as an arm of the state, therefore may not be named as a defendant in suits under Section 1983 for either injunctive or monetary relief; and state officials sued in their official capacity may not be sued for damages under Section 1983, but may be sued for injunctive relief.

By contrast, a plaintiff may bring a claim for monetary damages against state officers in their personal capacities under § 1983. *Hafer*, 502 U.S. at 27 ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'" (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989))).

Defendants argue that Ms. Linardos's claims "brought pursuant to 42 U.S.C. § 1983 fail because states are not 'persons' subject to liability under section 1983," and that "[t]he equitable relief that Plaintiff seeks cannot be sought from the individual capacity Defendants in their individual capacity or against a state agency." Mot. to Dismiss 9–12.

In response, Ms. Linardos argues that her "claims pursuant to Section 1983 are made against the defendants in their individual capacity, but rather their official capacity." Opp'n at 20. She likewise indicated that she "will seek permission from the Court to amend her complaint to specify those claims against the individual defendants in their official capacity." *Id.*

The Court agrees with Defendants.

Ms. Linardos may not bring claims for damages or equitable relief under Section 1983 against DPH because it is a state agency, although she may seek monetary damages against the individual Defendants in their individual capacities under Section 1983. *See Spencer*, 139 F.3d at 111 ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." (citing *Hafer*, 502 U.S. at 27)); *see also Norton v. New York State Dep't of Corr. Servs.*, No. 12-CIV-1263 CM, 2012 WL 5873644, at *5 (S.D.N.Y. Nov. 19, 2012), *aff'd sub nom. Norton v. Breslin*, 565 F. App'x 31 (2d Cir. 2014) (summary order) ("A First Amendment retaliation claim may only be brought against individual persons in their individual capacities, not against state agencies or individual persons in their official capacities." (citations omitted)).

And, because Ms. Linardos's claims against the Individual Defendants are in their individual, rather than official, capacities, she may not seek equitable relief under Section 1983. *See Ex parte Young*, 209 U.S. 123, 155–59 (1908) (allowing suit for prospective injunctive relief against state officials in their official capacities).

Accordingly, any claims against DPH in Counts One and Two will be dismissed without leave to amend because state agencies may not be sued under Section 1983.[2]

Ms. Linardos's claims for equitable relief under Section 1983, however, will be dismissed without prejudice because she has sued the Individual Defendants in their individual capacities.

---

[2] Ms. Linardos may, however, bring FMLA retaliation or interference claims against a state agency. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) ("The FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." (quoting *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 724–25 (2003))).

## B.  The Fourteenth Amendment Claims under Section 1983

### 1.  The Procedural Due Process Claims

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citing *Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72 (2d Cir.1988)); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) ("As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." (citation omitted)).

If the court determines that the Due Process Clause applies, it must then consider "what process is due." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 319 (2d Cir. 2002) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985)). This inquiry requires the court to balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Ciambriello*, 292 F.3d at 319–20 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Defendants do not dispute that Ms. Linardos "had a property interest in her continued employment." Mot. to Dismiss at 14. They argue, however, that she fails to allege deprivation of that interest because she "has not alleged that she has exhausted the due process available to her through the administrative remedies prior to bringing suit." *Id.*

In response, Ms. Linardos argues that she not only had a property interest in her continued employment, but also was "denied due process to contest the Defendants' defamatory

statements that 'Plaintiff was a threat to herself or others.'" Opp'n at 22. She claims that "there is

no meaningful grievance process that addresses defamatory statements or malicious referral to

EAP and mandated medical leave." *Id.*

The Court disagrees.

### i.  Property Interest

Ms. Linardos's alleged suspension without pay and demotion are deprivations of her

protected property interest, and thus the Due Process Clause applies in this case. *See*

*Narumanchi*, 850 F.2d at 72 (employer's "decision to suspend [Plaintiff] without pay implicated

a protected property interest"); *Faghri v. Univ. of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010)

("Where a public employee has a property interest in employment in a particular position, that

employee cannot be terminated or demoted without due process.").

As for what process is due, Ms. Linardos alleges that the Defendants denied her "rights,

customs, practices and fairness under Connecticut State Statutes, regulations, policies and past

practice, and the collective bargaining agreement." Compl. ¶ 148. The Court will therefore

consider whether the collective bargaining agreement, *see* ECF No. 19-3 ("CBA"), provided

sufficient procedures to protect Ms. Linardos's property interest in these adverse employment

actions. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a

plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that

document is thus 'integral to the complaint,' we may consider its contents even if it is not

formally incorporated by reference." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153

(2d Cir.2002)) (alteration in original)).

The CBA provides that "denial of sick pay is subject to the grievance and arbitration

provision of [the] Agreement." CBA at 42. Article 32 of the agreement sets forth the grievance

procedures, which involve an opportunity for employees, either individually or through their Union representatives, to submit arguments and evidence and to proceed to arbitration before "a panel of six (6) arbitrators, who are experienced in health care and public sector labor relations." *Id.* at 48–50. Likewise, the CBA provides that employees may not be disciplined, which is "defined as dismissal, demotion, suspension, reprimand or warning," without "just cause." *Id.* at 50. It also requires that employees receive "three (3) days written notice with pay prior to the effective date of any disciplinary demotion, suspension or dismissal" and may undergo the grievance procedure described above. *Id.* at 51.

The Complaint alleges that "Defendants failed to have adequate polices and/or procedures in place concerning the investigation and discipline of plaintiff and failed to follow those procedures that were in place." Compl. ¶ 145. Ms. Linardos does not include specific allegations about the deficiencies in the procedures set forth in the collective bargaining agreement, nor does she allege that she availed herself of those procedures.

Courts in this Circuit have found that, in similar circumstances as those here, "the limited procedural rights guaranteed under the circumstances of this case are satisfied by the pre-deprivation notice and hearing rights provided in the grievance procedures under" collective bargaining agreements, and failure to pursue such remedies warrants dismissal of the plaintiff's procedural due process claim. *Narumanchi*, 850 F.2d at 72; *see also Russo v. City of Hartford*, 158 F. Supp. 2d 214, 224–25 (D. Conn. 2001) ("In this case, Russo is claiming that his right to due process was violated because he was suspended from his work assignment without due process. . . . However, there is no allegation in the complaint in this case that Russo attempted to use the grievance procedures available through the collective bargaining agreement. Thus, he failed to avail himself of the right to be heard, which he is now claiming was violated."); *Harhay*

*v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) ("The CBA, which governed Harhay's employment, established a grievance and arbitration procedure, and Harhay took advantage of these procedures by filing two grievances that were considered by the Board and by pursuing arbitration. Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process.").

Accordingly, because Ms. Linardos does not allege that she was not notified of her rights to pursue these pre-deprivation remedies, or that specific aspects of these remedies were insufficient to ensure adequate procedural due process for her alleged property deprivation, Ms. Linardos's procedural due process claim based on these adverse employment actions fails.

### ii.  Liberty Interest (Stigma-Plus Claim)

"A person's interest in his good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or to create a cause of action under § 1983." *Skiff v. Colchester Bd. of Educ.*, 514 F. Supp. 2d 284, 295 (D. Conn. 2007), *aff'd sub nom. Skiff v. Colchester Sch. Dist.*, 316 F. App'x 83 (2d Cir. 2009) (summary order) (quoting *Patterson v. City of Utica,* 370 F.3d 322, 329–30 (2d Cir.2004)). "However, harm to one's reputation may trigger such protections if 'coupled with the deprivation of a more tangible interest, such as government employment,' which can give rise to what is known as a 'stigma-plus' claim." *Id.* (quoting *Patterson,* 370 F.3d at 330).

"A 'stigma-plus' claim is one 'brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest [such as the loss of employment] or property right (the plus), without adequate process.'" *Meyers v. Kishimoto*, 217 F. Supp. 3d 563, 581 (D. Conn. 2016) (quoting *Segal v. City of New York*, 459 F.3d 207, 209 n.1 (2d Cir. 2006)) (alteration in original). "To establish a stigma-plus claim, a plaintiff must establish that: (1) the government

made stigmatizing statements calling into question plaintiff's good name, reputation, honor, or integrity; (2) such stigmatizing statements were made public; and (3) the statements were made concurrently with, or in close temporal proximity, to plaintiff's dismissal from employment." *Meyers*, 217 F. Supp. 3d at 581 (citing *Segal*, 459 F.3d at 212–13). "If a plaintiff successfully proves his stigma-plus claim, due process requires that as a remedy he be given a post-deprivation opportunity to clear his name." *Patterson*, 370 F.3d at 330.

Ms. Linardos also alleges that she suffered reputational harm from the Defendants' alleged "defamatory statements that '[she] was a threat to herself or others.'" Opp'n at 22. She alleges that Defendants "falsely accused her of threatening Muhktar Mohamed, . . . based on her March 9, 2022 email to Buchelli where she stated 'thanks a lot Muhtar [sic].'" Compl. ¶ 57. Ms. Linardos alleges that in the letter referring her to an EAP, the Defendants stated that "Before you may return to work, you must provide evidence of your fitness to resume work activities certifying that you are not a threat to yourself or others." Compl. ¶ 67 (emphasis removed). Ms. Linardos alleges that this statement amounted to Defendants "falsely portraying her as a 'threat to herself or others,'" *id.* ¶ 74, and was "widely published." *Id.* ¶ 68. She alleges that this amounts to a deprivation of procedural due process because she was "denied due process to contest the Defendants' defamatory statements that 'Plaintiff was a threat to herself or others.'" Opp'n at 22.

The Court disagrees.

"An alleged statement may satisfy the 'stigma' requirement if it 'calls into question plaintiff's good name, reputation, honor, or integrity.'" *Mudge v. Zugalla*, 939 F.3d 72, 81 (2d Cir. 2019) (citing *Patterson*, 370 F.3d at 330). "To prevail on a 'stigma plus' claim, a plaintiff must show . . . the utterance of a statement 'sufficiently derogatory to injure his or her reputation,

that is capable of being proved false, and that he or she claims is false[.]'" *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Here, the alleged stigmatizing statement, Ms. Plyler's March 16, 2022 letter stating "Before you may return to work, you must provide evidence of your fitness to resume work activities certifying that you are not a threat to yourself or others," Compl. ¶ 67, does not make an accusation about Ms. Linardos, let alone a statement "sufficiently derogatory to injure . . . her reputation," nor is it "capable of being proved false." *Sadallah*, 383 F.3d at 38. While Ms. Linardos may argue that this statement, by implication, "falsely portray[s] her as a 'threat to herself or others[,]'" Compl. ¶ 74, "[t]he fact that an innocuous statement may be lead to unwarranted speculation does not make the statement stigmatizing." *Leichter v. Lebanon Bd. of Educ.*, 917 F. Supp. 2d 177, 190 (D. Conn. 2013); *see also id.* (concluding "email informing staff that the Plaintiff was placed on administrative leave while district operations were reviewed and instructing staff to refrain from communicating with the Plaintiff while he was on leave. . . [was] not the type of false reputation-tarnishing statements sufficient to support a stigma-plus due process claim").

Moreover, even if this statement was both stigmatizing and made public, and the property deprivations alleged above are sufficiently serious to support a stigma-plus claim, Ms. Linardos fails to allege that this statement from March 2022 was made "concurrently in time" with the property deprivations alleged above—namely, her demotion and suspension without pay and removal from her position—in May 2023 and September 2024. Compl. ¶¶ 107, 120. *See Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994) (where there was a five-month delay for publication of defamatory statements, "the absence of the necessary nexus between the defamation and the time of termination is obvious."); *Paterno v. City of New York*, 781 F. App'x 15, 16–17 (2d Cir. 2019) (summary order) ("The consent decree in the Title VII case was not

made public until a year after Paterno's transfer, and any allegedly defamatory statements by Commissioner Trottenberg were even further removed in time.").

 As a result, Ms. Linardos has failed to allege a stigma-plus claim.

 Accordingly, Ms. Linardos' procedural due process claim will be dismissed.

### 2. The Substantive Due Process Claim

 "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). "The Supreme Court limits substantive due process claims to 'deliberate decisions of government officials to deprive a person of life, liberty, or property.'" *Salem v. City of New York*, 811 F. App'x 678, 683 (2d Cir. 2020) (summary order) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The Supreme Court has warned, however, that it 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 144 (2d Cir. 1994) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "A substantive due process claim based on allegedly tortious conduct by a state actor therefore ordinarily requires evidence of conduct that 'can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense.'" *Id.* (quoting *Collins*, 503 U.S. at 128).

 Defendants argue that Ms. Linardos's substantive due process claim fails because "there is nothing that is shocking to the conscience about a public employee being subject to scrutiny

and investigations while her employment is protected by the terms and conditions of the

collective bargaining agreement." Mot. to Dismiss at 16–17.

In response, Ms. Linardos, comparing her case to that in *Bolmer v. Oliveira*, 594 F.3d

134 (2d Cir. 2010), argues that she "was labeled a 'threat to others[,]' . . . put out of work, and

stigmatized by persons with no medical or psychiatric training or accreditation[,]" conduct that

she claims "shocks the conscience and thereby violated the Fourteenth Amendment Substantive

Due Process Clause." Opp'n at 23–25.

The Court disagrees.

In *Bolmer*, the plaintiff brought a substantive due process claim based on his involuntary

commitment to a psychiatric ward. In evaluating the plaintiff's claim, the Second Circuit

discussed that while "[s]ubstantive due process prohibits states from involuntarily committing

nondangerous mentally ill individuals… [i]t does not, . . . require a guarantee that a physician's

assessment of dangerousness be correct." *Bolmer*, 594 F.3d at 142 (citations and internal

quotation marks omitted). The Second Circuit noted that *Rodriguez v. City of New York*, 72 F.3d

1051 (2d Cir.1995) established "that an involuntary commitment violates substantive due process

if the decision is made 'on the basis of substantive and procedural criteria that are ... substantially

below the standards generally accepted in the medical community.'" *Bolmer*, 594 F.3d at 142

(citing *Rodriguez*, 72 F.3d at 1063).

Here, Ms. Linardos does not allege that she suffered involuntary commitment to a

psychiatric ward, and the Defendants' alleged adverse employment actions are not so egregious

or outrageous as to shock the conscience. *See Matson v. Bd. of Educ. of City of N.Y.*, 631 F.3d 57

(2d Cir. 2011) (finding the disclosure of plaintiff's fibromyalgia did not implicate a privacy

right); *Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007) (holding that federal agency officials

making false or misleading statements about the air quality at ground zero was deliberate indifference which shocked the conscience).

Moreover, "[t]he Second Circuit has instructed that the substantive due process component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." *Claudio v. Town of Enfield*, No. 07CV146 (WWE), 2008 WL 2786433, at *6 (D. Conn. July 16, 2008) (citing *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir.1986)). "Thus, a public employee cannot challenge termination pursuant to the substantive due process clause." *Claudio*, 2008 WL 2786433, at *6 (citing *Chaffer v. Bd. of Educ. of City Sch. Dist. of City of Long Beach*, 75 F. App'x 12, 13 (2d Cir. 2003) (summary order)); *see also Tessler v. Paterson*, 768 F. Supp. 2d 661, 670 (S.D.N.Y. 2011) ("[C]ourts in this circuit have consistently held that even where other alleged constitutional rights are implicated, terminating government employment does not 'shock the conscience' and thus does not constitute a violation of substantive due process." (citation omitted)). Thus, in this case, Ms. Linardos not only fails to allege that any adverse employment actions "shock the conscience," but also fails to allege that they are sufficiently serious to overcome precedent indicating that comparable employment actions would not give rise to a substantive due process claim.

Accordingly, Ms. Linardos fails to assert a substantive due process violation on the basis of the adverse employment actions that she alleges to have suffered, and this claim will be dismissed.

### 3.  The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment protects public employees from discrimination and retaliation for complaining about discrimination. *See Vega v.*

*Hempstead Union Free Sch. Dist*, 801 F.3d 72, 82 (2d Cir. 2015). Public employees may bring

discrimination and retaliation claims under 42 U.S.C. § 1983 against "responsible persons acting

under color of state law." *Id.* at 87. Any state employee "acting in his official capacity" acts

"under color of state law." *Id.* at 88 (internal quotation marks omitted).

To state an equal protection claim, a plaintiff must allege facts showing that: (1) she was

treated differently from similarly situated individuals and (2) that the discriminatory or different

treatment was based on "impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted)

(quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Courts have recognized that a plaintiff may bring an equal protection claim if she

suffered "purposeful or intentional discrimination on the basis of gender." *Back v. Hastings On

Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004); *see also id.* ("Individuals have

a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis

of sex in public employment.").

When a suspect classification is not at issue, the Equal Protection Clause still requires

that individuals be treated the same as "similarly situated" individuals. *Fortress Bible Church v.

Feiner*, 694 F.3d 208, 221–22 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal

protection claim "where the plaintiff alleges that she has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment."

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). "That being said, the

Supreme Court and the Second Circuit both have held that 'class of one' claims do not apply to

public employment." *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 585 (D. Conn. 2023)

(citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008) ("[T]he class-of-one theory of equal protection has no application in the public employment context.") *and Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008) ("Recently, the Supreme Court held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause under a 'class of one' theory. . . we overrule any precedent of this Circuit to the extent that it conflicts with the holding of *Engquist*."))

Defendants argue that Ms. Linardos's "claims that she is a 'class of one' who was subject to arbitrary, malicious, or bad faith treatment, are precluded in the public employment context." Mot. to Dismiss at 17 (citing *Apatow*, 651 F. Supp. 3d at 585).

In response, Ms. Linardos contends that her "equal protection claim is not based on a 'class of one' but rather is based on her protected class as a female[,]" and argues that she "has satisfied her burden of showing facts suggesting an inference of discriminatory motivation." Opp'n at 26.

In their reply, the Defendants assert that "the Complaint contains no allegation of disparate treatment based upon any protected class – it never alleges that the Plaintiff is female." Reply at 7 (emphasis removed).

The Court agrees.

As the Defendants note, and Ms. Linardos does not dispute, because Ms. Linardos is a public employee, she may not bring a "class of one" equal protection claim. *See Engquist*, 553 U.S. at 598 ("[T]he class-of-one theory of equal protection does not apply in the public employment context.").

While Ms. Linardos alleges that her equal protection claim "is based on her protected class as a female," Opp'n at 26, she does not allege that Defendants' actions were motivated by

her gender. In fact, the Complaint contains no allegations that any of the Defendants expressed discriminatory views towards women to Ms. Linardos or others, nor does it allege that similarly situated individuals were treated differently than Ms. Linardos because she was a woman.[3] *See DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385, 391 (2d Cir. 2018) (summary order) ("Although many of these statements were critical, none possesses gendered 'content or overtone.' At most, they 'indicate a general dislike for' DiPizio; they are not, standing alone, 'objectively indicative of gender animus.'" (citing *Lizardo v. Denny's, Inc*., 270 F.3d 94, 104 (2d Cir. 2001); *and Ford v. New York City Dep't of Health & Mental Hygiene*, 545 F.Supp.2d 377, 389 (S.D.N.Y. 2008), *aff'd sub nom. Ford v. N.Y.C. Dep't of Health & Mental Hygiene*, 352 F. App'x 471 (2d Cir. 2009) (summary order)).

Accordingly, Ms. Linardos's equal protection claim will be dismissed.[4]

## C.  The FMLA Claims Against Ms. Plyler

"The Family and Medical Leave Act provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017) (citation omitted). To enforce these protections, the FMLA "creates a private right of action to seek both equitable relief and money damages against any employer (including a public

---

[3] In addition, the Complaint does not explicitly allege that Ms. Linardos is a woman, or otherwise is a member of a protected class. *See, e.g., Doall v. Plumadore*, No. CV07617ADSAKT, 2007 WL 9711199, at *8 (E.D.N.Y. Sept. 10, 2007) (dismissing equal protection claim where "the Plaintiff fails to allege membership in any protected class. . . does not mention race, religion, national origin, or any other protected category throughout her complaint. . . [and] also fails to allege that she were treated differently than other similarly situated individuals.")

[4] The Defendants argue that they are entitled to qualified immunity on Ms. Linardos's due process and equal protection claims brought under Section 1983 "because it was not clearly established that internal investigations of allegations of [Ms. Linardos's alleged] wrongdoing could be a violation of [her] rights or that [her] refusal to utilize the process available to her through the collective bargaining agreement was a violation of her constitutional rights." Mot. to Dismiss at 21. Because the Court dismisses these claims on the merits, however, it declines to address the issue of qualified immunity at this time. *See Frazier v. Coughlin*, 81 F.3d 313, 316 n.4 (2d Cir. 1996) ("Because we affirm dismissal of [claims against individual defendants] on other grounds, we do not reach the issue of qualified immunity.")

agency) in any Federal or State court of competent jurisdiction should that employer interfere

with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d

161, 174 (2d Cir. 2006) (citation and internal quotation marks omitted).

      The FMLA defines an "employer" as "any person who acts, directly or indirectly, in the

interest of an employer to any of the employees of such employer." 29 U.S.C. §

2611(4)(A)(ii)(I). In determining whether an individual is an "employer" under the FMLA,

courts have applied the economic-reality test used in the context of the Fair Labor Standard Act

("FLSA"):

> Under this test, courts ask whether the alleged employer possessed the power to control
> the worker in question, with an eye to the economic reality presented by the facts of each
> case. To do so, they consider a nonexclusive and overlapping set of factors intended to
> encompass the totality of circumstances[.] These factors include whether the alleged
> employer (1) had the power to hire and fire the employees, (2) supervised and controlled
> employee work schedules or conditions of employment, (3) determined the rate and
> method of payment, and (4) maintained employment records. No one of the four factors
> standing alone is dispositive and any relevant evidence may be examined so as to avoid
> having the test confined to a narrow legalistic definition.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422–23 (2d Cir. 2016) (internal quotation

marks and citations omitted).

      "In the FMLA context, courts assessing the economic reality of an employment

relationship have construed this test as asking essentially whether the putative employer

'controlled in whole or in part plaintiff's rights under the FMLA.'" *Id.* at 422 (citation omitted).

      Defendants argue that Ms. Linardos's "FMLA claims against Defendant Plyler fail

because she has not alleged facts to establish that she is individually liable as an employer under

the FMLA." Mot. to Dismiss at 18.

      In response, Ms. Linardos argues that "Plyler, who took direct and indirect disciplinary

actions against the Plaintiff, is an 'employer' pursuant to the FMLA." Opp'n at 27. Ms. Linardos

alleges that (1) Ms. Plyler sent her the March 16, 2022 letter regarding her EAP referral, (2) that

she brought complaints about the administration of her PIP to Ms. Plyler, and (3) that Ms. Plyler

sent her a letter regarding her suspension without pay. Opp'n at 27–29 (citing Compl. ¶¶ 67, 100,

107).

In reply, Defendants argue that "Plaintiff cannot plausibly allege that she was denied or

discouraged from taking FMLA leave by Defendant Plyler who was never an employee of DPH

but an Office of Policy and Management's Office of Labor Relations employee who investigated

the complaints made against Plaintiff." Reply at 8.[5]

The Court disagrees.

Ms. Linardos alleges that Ms. Plyler is a "Labor Relations Specialist at the State of

Connecticut Department of Public Health." Compl. ¶ 9. She also alleges that Ms. Plyler sent her

letters regarding adverse employment actions, such as the March 2022 letter placing her on

administrative leave, and the May 2023 letter suspending her without pay. *Id.* ¶¶ 67, 107. In

addition, Ms. Linardos alleges that she reported alleged "retaliation for her using FMLA care

giver leave" and several other grievances against her supervisors to Ms. Plyler. *Id.* ¶ 100.

While the Complaint alleges that Ms. Linardos communicated with another human

resources employee regarding her FMLA leave on at least one occasion in August 2022, *see id.*

¶¶ 76–79, and, as Defendants note, it alleges that only "DPH, Juthani, Blashinski and Greenlee

---

[5] Defendants also argue for the first time on reply that Ms. Linardos's FMLA claim fails against Ms. Plyler because "courts in the Second Circuit have consistently held that the type of conduct Plaintiff alleges here is insufficient to discourage a reasonable employee from asserting her FMLA rights[,]" not because Ms. Plyler is not an individual who would be an employer under the FMLA. Reply at 9 (citing *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 536 (S.D.N.Y. 2009) *and Hockenjos v. Metro. Transp. Auth.*, No. 14 Civ. 1679 (PKC), 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016)). Courts "generally treat arguments raised for the first time in a reply brief as waived." *United States v. George*, 779 F.3d 113, 119 (2d Cir. 2015). Because the Court finds that Ms. Linardos has sufficiently alleged that Ms. Plyler is an employer under the FMLA, and the Defendants challenge Ms. Linardos's FMLA claim only insofar as it relates to Ms. Plyler, the Court declines to dismiss her FMLA claim at this early stage of the proceeding. *See Harper v. New York City Hous. Auth.*, 673 F. Supp. 2d 174, 179 (S.D.N.Y. 2009) ("[P]laintiffs bringing FMLA retaliation claims are not required to plead specific facts establishing a prima facie case of discrimination at the motion to dismiss stage; instead, plaintiffs need only plead enough facts that, if true, state a claim to relief that is plausible on its face.").

are 'employers' pursuant to the FMLA,"[6] *id.* ¶ 154, on a motion to dismiss the Court must "construe the complaint in the light most favorable to the plaintiff[.]" *York*, 286 F.3d at 125. At this early stage of the proceeding, drawing all inferences in the Plaintiff's favor, as the Court must, Ms. Linardos has plausibly alleged that Ms. Plyler at least in part "controlled . . . [Ms. Linardos's] rights under the FMLA." *Graziadio*, 817 F.3d at 422; *see id.* at 423 (vacating and remanding for further proceedings a district court decision granting summary judgment on a FMLA claim because the "analysis overlook[ed] substantial evidence from which a rational trier of fact could find that [Defendant] was an 'employer' in economic reality under the FMLA.").

Accordingly, the Court denies the motion to dismiss Ms. Linardos's FMLA claim as to Ms. Plyler.

### D.  The State Law Claims

Because the Defendants do not seek to dismiss Ms. Linardos's First Amendment retaliation claim under Section 1983 against the Individual Defendants and the Court has denied the motion to dismiss her FMLA claim, the Court will consider the Defendants' arguments to dismiss certain of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.").

---

[6] Ms. Linardos claims "that the omission of Plyler in paragraph 154 of the Complaint was an oversight and [] move[s] to amend to include her." Opp'n at 27.

As for the state law claims, the Defendants allege that there is no cause of action for a First Amendment claim under the Connecticut Constitution in Count One. They further argue that claims based on an alleged violation of Connecticut General Statute § 31-5lq in Count Four fails because the Individual Defendants may not be held liable under this statute, and DPH, as a state agency, may not be sued under this statute in federal court. Finally, they argue that Counts Five and Six fail as to DPH, because tort claims may not be brought against state agencies.

The Court will address each of these arguments in turn.

### 1. The Free Speech Claim under Connecticut's Constitution

Article First, Section One states: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." Conn. Const. art. 1 § 1. Article First, Section Four states, "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." Conn. Const. art. 1 § 4. Ms. Linardos brings free speech claims under Article First, Sections One and Four.

The Defendants argue that this Court lacks jurisdiction over Ms. Linardos's claims brought under the Connecticut Constitution because "there is no recognized private cause of action for money damages under Article One Sections 1 and 4 of the Connecticut Constitution for free speech retaliation in the employment setting against these Defendants." Mot. to Dismiss at 9; *see also id.* at 8–9. Defendants argue that "§ 31-51q creates a statutory cause of action for damages to protect employees from retaliatory action illegally grounded in the employee's exercise of enumerated constitutionally protected rights[,]" that allows "an employee [to] vindicate certain of his or her federal and state constitutional rights." *Id.* at 9.

30

In response, Ms. Linardos argues "private causes of action for violation[s] of the [Connecticut Constitution] have been permitted." Opp'n at 17 (quoting Mot. to Dismiss at 9 (noting that the Connecticut Supreme Court's decision "in *Binette v. Sabo*, 244 Conn. 23, 41 (1998) recognized a private cause of action for money damages for violations of Article first, §§ 7 and 9 of the Connecticut 18 constitution; this recognition was limited.")).

In reply, Defendants argue that "[t]here is also no recognized private cause of action directly under Article First § 4 of the Connecticut Constitution for money damages apart from that incorporated in Conn. Gen. Stat. § 31-51q." Reply at 6.

The Court agrees.

District courts have the discretion to "decline to exercise supplemental jurisdiction over a claim. . . if . . . the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245-46 (2d Cir. 2011). The Second Circuit has explained that the decision to decline to exercise supplemental jurisdiction over complex or first impression legal issues derives from the principles of federalism and comity. *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1996) ("Where a pendent state claim turns on novel or unresolved questions of state law. . . principles of federalism and comity may dictate that these questions be left for decision by the state courts.").

"[T]here is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, § § 1, 8 and 20) of the Connecticut Constitution." *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) (citing *Kelley Property Development, Inc. v. Lebanon*, 627 A.2d 909, 922 (Conn. 1993)); *see also Sommers v. Klug*, No. FSTCV165015768S, 2017 WL 2466688, at *5 (Conn. Super. Ct. Apr. 25, 2017)

("[T]he constitution of Connecticut does not provide for a private right of action based on a violation of article first, § 1 or § 20.").

In addition, while Connecticut courts have recognized a private right of action under Article First, Section Four for declaratory or injunctive relief, *see Lopez v. Smiley*, 375 F. Supp. 2d 19, 24 n.2 (D. Conn. 2005) (collecting cases), the Court is unaware of any state cases recognizing a claim for monetary damages under this provision. *See id.* ("Mr. Lopez has cited no case in which a Connecticut state court recognized a similar constitutional tort claim for money damages."); *Richard v. Martin*, No. 3:20-CV-1354 (CSH), 2022 WL 5246814, at *16 (D. Conn. Oct. 6, 2022) ("No cases since *Lopez* appear to have recognized a claim for monetary damages under Article First, § 4."); *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 409 (D. Conn. 2017) ("Connecticut courts have rejected the argument that the free-speech provisions of the Connecticut Constitution are independently actionable apart from the cause of action that is prescribed under § 31–51q." (citing *Thibault v. Barkhamsted Fire Dist.*, No. CV136008093S, 2013 WL 6038259, at *5 (Conn. Super. Ct. Oct. 21, 2013)); *and Blue v. Carbonaro*, No. CV146015705S, 2015 WL 3555294, at *21 (Conn. Super. Ct. May 11, 2015)).

In the absence of any applicable precedent, the Court declines to exercise supplemental jurisdiction over claims for damages under Article First, Sections One or Four of the Connecticut Constitution, *see Lopez*, 375 F. Supp. 2d at 24–26 (refusing to exercise supplemental jurisdiction over an alleged claim for monetary damages under Article First, Section Four, among other state constitutional claims), which can be pursued in state court.

Likewise, while Ms. Linardos also seeks injunctive and declaratory relief, the Court declines to exercise supplemental jurisdiction over this claim, which is best adjudicated in state court. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental

jurisdiction . . . if . . . the claim raises a novel or complex issue of State law, [or] . . . the claim

substantially predominates over the claim or claims over which the district court has original

jurisdiction.").[7]

Accordingly, Ms. Linardos' Connecticut Constitution Claims under Article First,

Sections One and Four will be dismissed without prejudice to refiling in state court.

### 2.  The Statutory and Common-Law Claims Against DPH

The Eleventh Amendment of the Constitution bars suits against a state, a state agency,

and suits for damages against state officers in their official capacities in federal court unless the

state has waived its immunity.[8] *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d

Cir. 1996) ("[T]he Supreme Court has interpreted the Eleventh Amendment to extend to suits by

all persons against a state in federal court); *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official

responsibilities is a claim against the State that is protected by the Eleventh Amendment."); *Atl.*

*Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("The Eleventh Amendment bars

suits against a state agency, . . ., absent a waiver of sovereign immunity.").

---

[7] In addition, Ms. Linardos's claims for injunctive or declaratory relief that are not barred by Eleventh Amendment immunity can be pursued in this case under the First Amendment of the federal Constitution. *See Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (summary order) ("Under the doctrine established in *Ex parte Young*, 'a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" (citation omitted)).

[8] A narrow exception to Eleventh Amendment immunity exists for certain suits seeking injunctive and declaratory relief against state officials in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State."). "Under the doctrine established in *Ex parte Young*, a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective. A plaintiff may not use this doctrine to adjudicate the legality of past conduct." *Clark*, 510 F. App'x at 51 (summary order) (citations and internal quotation marks omitted).

"[I]n *Hans v. Louisiana,* 134 U.S. 1, 10–11, 10 S.Ct. 504, 505–06, 33 L.Ed. 842 (1890),

the [Supreme] Court rejected the idea that the Eleventh Amendment allowed states, without their

consent, to be sued by their own citizens in federal court." *Mancuso*, 86 F.3d at 292. A state's

waiver of immunity is found only where express language or overwhelming implication from the

text allow no other interpretation than a waiver of immunity. *See Richardson v. N.Y. State Dep't

of Corr. Serv.*, 180 F.3d 426, 448 (2d Cir. 1999) ("[W]aiver is found only where stated 'by the

most express language or by such overwhelming implications from the text as will leave no room

for any other reasonable construction.'" (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

Defendants argue that Ms. Linardos's state law claims against DPH are barred under the

doctrine of sovereign immunity. Mot. to Dismiss at 11–12. They likewise argue that her claims

for declaratory and injunctive relief against the individual defendants in their individual capacity

are also improper. *Id.* at 11–12.

Ms. Linardos argues that DPH may be held liable under Conn. Gen. Statute 31-51q

because the statute "specifically applies to 'any employer including the state and any

instrumentality or political subdivision thereof[.]'" Opp'n at 18–20. She also seeks leave to

amend to bring claims against the individual Defendants in their official capacities, and argues

that she "seeks prospective '[i]njunctive relief prohibiting defendants from retaliating against

Plaintiff, reinstating her to her position as HIV/VH Surveillance Program Director and a

declaratory judgment that the Defendants are in violation to the United States Constitution." *Id.*

at 20–21 (quoting Compl. ¶ 5).

In reply, the Defendants argue that Ms. Linardos's "Conn. Gen. Stat. § 31-51q claim

[against DPH] fails because the State has not waived Eleventh Amendment immunity against

these claims in federal court and the waiver of sovereign immunity is limited to the Superior

Court." Reply at 3–4.

The Court agrees.

Ms. Linardos does not dispute that, absent a waiver from the state, she may not bring tort

claims asserted in Counts Five and Six against DPH, a state agency, in federal court, and no such

waiver has been alleged here. *See Prigge v. Ragaglia*, 828 A.2d 542, 549 (Conn. 2003) ("When a

plaintiff brings an action for money damages against the state, he must proceed through the

office of the claims commissioner pursuant to chapter 53 of the General Statutes, §§ 4–141

through 4–165. Otherwise, the action must be dismissed for lack of subject matter jurisdiction

under the doctrine of sovereign immunity."). She likewise does not dispute that her claims for

equitable relief against the individual Defendants in their individual capacities fail, as any claim

for prospective injunctive relief must be brought against these Defendants in their official

capacities. *See Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("[E]quitable relief could be

obtained against [municipal official] only in his official, not his individual, capacity.").

As for her claim under Conn. Gen. Statute 31-51q, "although Connecticut courts have

held that the statute constitutes a waiver of sovereign immunity, the decisions involved waiver in

state actions only." *Cook v. McIntosh*, No. CIV. 3:97CV773 (AHN), 1998 WL 91066, at *6 (D.

Conn. Feb. 20, 1998) (citing *Skinner v. Angliker*, 544 A.2d 246 (Conn. App. 1988), *aff'd*, 559

A.2d 701 (Conn. 1989)). "A State's constitutional interest in immunity encompasses not merely

*whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99 (1984) (emphasis

in original). Here, DPH has indicated that "the State has not waived Eleventh Amendment

immunity against these claims in federal court and the waiver of sovereign immunity is limited

to the Superior Court." Reply at 3.

As a result, because Conn. Gen. Statute 31-51q does not explicitly authorize a suit against a state agency in federal court, and the state has not consented to Ms. Linardos bringing her Conn. Gen. Statute 31-51q claim in federal court in this case, the Court must dismiss her claims against DPH under the statute for lack of jurisdiction. *Cook*, 1998 WL 91066, at *6 ("There is no support for the contention that by the enactment of Conn. Gen.Stat. § 31–51q the state intended to waive its Eleventh Amendment immunity from suit in federal court."); *Cromartie v. Dep't of Correction*, No. 3:21CV01236 (JBA), 2022 WL 4237072, at *3 (D. Conn. Sept. 14, 2022) ("The enactment of §§ 31-51q is no manifestation of any immunity waiver by the state from suit under this statute in federal court, nor can supplemental jurisdiction vitiate the Eleventh Amendment."); *Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 WL 1763202, at *7 (D. Conn. Apr. 22, 2019) ("Thurmand's claim under section 31-51q against UConn fails, however, because the Eleventh Amendment bars private suits against the state in federal court, unless the state waives its immunity."); *Faghri v. Univ. of Connecticut*, No. 3:06-CV-01957 VLB, 2010 WL 2232690, at *10 (D. Conn. June 3, 2010) (finding "the Court lacks jurisdiction over the Plaintiff's Conn. Gen.Stat. § 31–51q" where state did not waive sovereign immunity).

Accordingly, Ms. Linardos's state law claims against DPH in Counts Four, Five, and Six will be dismissed.

### 3. The Conn. Gen. Stat. § 31–51q Claim Against the Individual Defendants

Courts in this district have "interpreted [Conn. Gen.Stat. § 31–51q] as limiting liability only to the state, its instrumentalities or its political subdivisions. . . [and have] rejected imposing individual liability pursuant to § 31–51 q." *Lenox v. Town of N. Branford*, No.

3:08CV1448WWE, 2009 WL 1099118, at *2 (D. Conn. Apr. 23, 2009) (collecting cases); *Cook*, 1998 WL 91066, at *6 (Conn. Gen.Stat. § 31–51q "claim must be dismissed against the defendants in their individual capacities because only an employer may be subject to liability under this statute.").

Defendants argue that Ms. Linardos's claims under Conn. Gen. Stat. § 31–51q against the individual Defendants must be dismissed because "this statute permits only a cause of action against the employer, not individual capacity Defendants." Mot. to Dismiss at 12.

The Court agrees.

Accordingly, Ms. Linardos's claims against the individual Defendants will be dismissed.

### 4.  The Defamation Claim Against the Individual Defendants

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (citing *Mercer v. Cosley*, 955 A.2d 550, 561 (Conn. App. 2008)). "A defamatory statement is defined as a communication that tends to 'harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her.]'" *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763 (Conn. 2004).

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.*, 969 A.2d 736, 742 (Conn. 2009) (citation omitted).

If the plaintiff establishes a prima facie case, the defendant may assert that the communications were protected by either a qualified or an absolute privilege based on a specific

public interest that requires the protection of such communications. *See Gambardella*, 969 A.2d at 742; *Kelley v. Bonney*, 606 A.2d 693, 702 (Conn. 1992). Once a defendant claims that privilege, courts must determine (1) whether or not the privilege applies, which is a question of law, *Gambardella* at 742–43 (citing *Miron v. Univ. of New Haven Police Dep't*, 931 A.2d 847, 853 (Conn. 2007)); and (2) if so, whether it has been abused, which is a question of fact, *id.* at 743 (citing *Bleich v. Ortiz*, 493 A.2d 236, 239 (Conn. 1985)). "[A] claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue." *Bleich*, 493 A.2d at 240. On the other hand, an absolute privilege bars recovery for a defamatory statement "even if it is published falsely and maliciously." *Kelley*, 606 A.2d at 702.

Ms. Linardos claims that "defendants published false statements that harmed [her] and are per se defamation." Compl. ¶ 169. She alleges that in her August 2022 letter of reprimand, Ms. Greenlee informed her that Ms. Linardos's March 9, 2022 email to Ms. Buchelli "contained a statement that caused alarm to your colleague and managers." *Id.* ¶ 63. She claims that this statement in her email, "Thank you Muhktar"[9] "was subsequently used as a basis for Defendants' defamatory statement that Plaintiff was a threat to herself or others." *Id.* Specifically, she alleges that Ms. Plyler's letter informed her that "Before you may return to work, you must provide evidence of your fitness to resume work activities certifying that you are not a threat to yourself or others." *Id.* ¶ 67 (emphasis removed). "Defendants widely published this false accusation that plaintiff was a threat to herself or others." *Id.* ¶ 68.

The Individual Defendants argue that Ms. Linardos's defamation claim must be dismissed because she "has failed to sufficiently allege that the Defendant acted with actual

---

[9] Ms. Linardos alleges that her original e-mail contained the statement, "Thank you Mukhtar, I won't forget this." Compl. ¶ 51. In that same e-mail, Ms. Linardos allegedly told Ms. Buchelli that Mr. Mohamed—Mukhtar—was "flatly lying to managers just to get his way[.]" Compl. ¶ 51. Elsewhere in the Complaint, however, she claims that her original statement was "thanks a lot Muhtar [sic]" *id.* ¶ 57, or "Thank you Muhktar." *id.* ¶ 63.

malice." Mot. to Dismiss at 30 (emphasis removed). They further argue that, even if the statements were defamatory, they are entitled to qualified privilege for "intracorporate communications in the context of employment decisions." *Id*. at 30–31.

In response, Ms. Linardos argues that Ms. Plyler's "accusation" that Ms. Linardos "was a harm to herself or others" was used to support "placing her on leave, ordering her to EAP and demanding that she obtain a certificate of mental health fitness from a physician" and that she has sufficiently alleged actual malice. Opp'n at 32–33. She also argues that qualified immunity does not apply because her "defamation claim is not about 'communications between managers'" but rather, "the defamatory statements and conduct were 'widely publicized.'" *Id.* at 33–34.

The Court disagrees.

Ms. Linardos claims that the following statement is defamatory:

> Before you may return to work, you must provide evidence of your fitness to resume work activities certifying that you are not a threat to yourself or others… In advance of your return to work, you must contact the Human Resources in Advance. In the meantime, our expectation is that you will not return to the worksite for any reason. . .

Mot. to Dismiss at 32 (citing Compl. ¶ 67) (emphasis removed). She is incorrect.

As an initial matter, the letter's requirement that Ms. Linardos "provide evidence of [her] fitness to resume work activities certifying that [she is] not a threat to [herself] or others" and stating that her employer's "expectation is that [she] will not return to the worksite for any reason" does not accuse Ms. Linardos of being "a harm to herself or others," nor does it even make a factual statement about Ms. Linardos. "Where the alleged defamatory statements were not made about the [plaintiff], they do not satisfy the 'of and concerning' element crucial to prevailing on a common-law defamation claim." *QSP, Inc. v. Aetna Cas. & Sur. Co*., 773 A.2d 906, 916 (Conn. 2001). As a result, Ms. Linardos fails to establish that this statement is defamatory, particularly given the context of the statement in a letter from her employer placing

her on administrative leave and indicating the conditions of her return from such leave. *See NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 48–49 (Conn. 2020) ("Context is a vital consideration in any effort to distinguish a nonactionable statement of opinion from an actionable statement of fact. . . . [T]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." (citations and internal quotation marks omitted)).

To the extent that Ms. Linardos argues that these requirements imply that her employer believes that she may be a threat to herself or others, this alleged implication does not "convey an objective fact, . . . [and] generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc.*, 223 A.3d at 47; *see also Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 289 (D. Conn. 2021) ("Statements of opinion, even if negative or otherwise harmful, cannot, as a matter of law, form the basis for a defamation claim.").

In addition, even if this statement was defamatory, Ms. Linardos's conclusory allegation that "Defendants widely published this false accusation that plaintiff was a threat to herself or others," Compl. ¶ 68, fails to plead with specificity by whom or to whom the statement was "published." *See L. Offs. of Frank N. Peluso, P.C. v. Cotrone*, No. FST CV 06 5000599 S, 2009 WL 3416247, at *3 (Conn. Super. Ct. Sept. 23, 2009) ("[D]efamation must be pleaded with heightened particularity. Specificity is required in greater detail than the plaintiff's indistinguishable assertion that the statements were made in January to 'diverse persons.'") (collecting cases); *see also Fraser v. Franco*, No. 3:22CV01014(SALM), 2022 WL 4367576, at *6 (D. Conn. Sept. 21, 2022) ("'A claim of defamation must be pleaded with specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of falsity.' . .

. In order to meet this pleading standard, a complaint 'must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom. Imprecise pleading is not permitted in the context of alleged defamation.'" (quoting *Stevens v. Helming*, 135 A.3d 728, 732 n.3 (Conn. App. 2016))).

Accordingly, Ms. Linardos fails to state a claim for defamation, and this claim will be dismissed.[10]

### 5. The False Light Invasion of Privacy Claim Against the Individual Defendants

Courts in Connecticut have recognized that liability for a false light invasion of privacy claim "may be imposed where a defendant 'gives publicity to a matter concerning another that places the other before the public in a false light ... if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Chiaravallo*, 561 F. Supp. 3d at 291 (quoting *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 311 (D. Conn. 2000)). "The statements themselves must be false; moreover, they must be 'such a major misrepresentation of a plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be

---

[10] The Defendants argue that even if these statements are defamatory, qualified privilege for "intracorporate communications in the context of employment decisions" applies in this case. Mot. to Dismiss at 30–31. "[C]ommunications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business." *Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 662 A.2d 89 (Conn. 1995) While the Court need not reach the issue of whether this qualified privilege applies here, it notes that "courts within this District typically resolve questions of whether a qualified privilege was abused, in the context of a defamation claim, at the summary judgment stage, on a fuller factual record." *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 227 (D. Conn. 2019) (collecting cases).

taken by a reasonable man in his position." *Chiaravallo*, 561 F. Supp. 3d at 291 (citation

omitted).

"An essential element of a false light invasion of privacy claim is that the defendant gives

publicity to false information." *Grossman*, 131 F. Supp. 2d at 311. While for a claim for

defamation, the statement need only be repeated to a third person, "[t]o recover under a theory of

false light invasion of privacy, however, a plaintiff must show that the matter was made public,

either to the 'public at large, or to so many persons that the matter must be regarded as

substantially certain to become one of public knowledge.'" *Chiaravallo*, 561 F. Supp. 3d at 292

(quoting *Handler v. Arends*, 1995 WL 107328, at *7 (Conn. Super. Ct. Mar. 1, 1995)). "In the

employment context specifically, 'courts have determined that when information is conveyed

only to employees with a duty, responsibility and a need for such information there is not

sufficient publicity to support an action for invasion of privacy.'" *Chiaravallo*, 561 F. Supp. 3d

at 292 (quoting *Grossman*, 131 F. Supp. 2d at 311–12).

Ms. Linardos claims that the statement in Ms. Plyler's letter requiring her to "provide

evidence of [her] fitness to resume work activities certifying that [she is] not a threat to [herself]

or others" gives rise to a claim for false light invasion of privacy. Compl. ¶ 67.

For the reasons discussed above, Ms. Linardos has failed to plead a statement

"concerning" her that would give rise to a false light invasion of privacy claim. *See Chiaravallo*,

561 F. Supp. 3d at 291 ("liability may be imposed where a defendant 'gives publicity to a matter

concerning another that places the other before the public in a false light.'" (citation omitted)). In

addition, as discussed previously, Ms. Linardos fails to specify to whom the statement was

repeated or where it was published, and her conclusory allegation that the statement was "widely

published," Compl. ¶ 68, is insufficient to plead a claim for false light invasion of privacy,

particularly in light of exceptions allowing for publication to certain individuals in the
employment context. *Chiaravallo*, 561 F. Supp. 3d at 292 ("In the employment context
specifically, 'courts have determined that when information is conveyed only to employees with
a duty, responsibility and a need for such information there is not sufficient publicity to support
an action for invasion of privacy." (citation omitted)); *Weissman v. Koskoff*, No.
HHDCV106012922S, 2011 WL 590461, at *9 (Conn. Super. Ct. Jan. 19, 2011), *aff'd sub nom.*
*Weissman v. Koskoff, Koskoff & Bieder*, P.C., 46 A.3d 943 (Conn. App. 2012) ("A false light
privacy claim must also be pleaded with specificity[.]"); *Chertkova v. Connecticut Gen. Life Ins.*
*Co.*, No. CV980486346S, 2002 WL 1902988, at *4 (Conn. Super. Ct. July 12, 2002), *aff'd*, 822
A.2d 372 (Conn. App. 2003) (dismissing false light claim where plaintiff failed to plead "that the
defendant communicated to the public at large, or caused to be communicated to the public,
offensive material about her").

    Accordingly, Ms. Linardos's claim for false light invasion of privacy will be dismissed.[11]

### E.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later
> than: (A) 21 days after serving it, or (B) if the pleading is one to
> which a responsive pleading is required, 21 days after service of a
> responsive pleading or 21 days after service of a motion under Rule
> 12(b), (e), or (f), whichever is earlier.

---

[11] To the extent that Ms. Linardos intended to rely on other "false accusations" or "false statements" Compl. ¶ 84,
169, to support her defamation and false light invasion of privacy claims, she fails to plead with the specificity
required of such claims. *See Fraser*, 2022 WL 4367576, at *6 ("A claim of defamation must be pleaded with
specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of
falsity. . .  Imprecise pleading is not permitted in the context of alleged defamation." (citation and internal quotation
marks omitted)); *Light*, 2024 WL 1199717, at *9 ("A plaintiff bears the burden to prove the content of specific
statements that form the basis for a false light claim. '[E]vidence of what was said or written about the plaintiff is
essential .... because without knowledge of the words that were publicized, the trier of fact cannot evaluate an
essential element of the cause of action, namely the falsity of the words.' Put differently, it is not enough for a
plaintiff merely to insinuate that a defendant may have said something that was false and placed the plaintiff in an
unflattering light." (quoting *Weissman*, 2011 WL 590461, at *9) (alterations in original)).

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

As discussed above, Ms. Linardos's Section 1983 claims against DPH fail because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer*, 139 F.3d at 111 (citing *Hafer*, 502 U.S. at 27). Likewise, sovereign immunity bars Ms. Linardos from asserting her state law claims against

DPH in federal court. *See Atl. Healthcare Benefits Tr.*, 2 F.3d at 4 ("The Eleventh Amendment bars suits against a state agency, . . ., absent a waiver of sovereign immunity").

As a result, any Section 1983 or state law claims that Ms. Linardos seeks to bring against DPH in this case would be futile. Ms. Linardos may, however, amend her complaint to bring suit for prospective equitable relief against the Individual Defendants in their official capacities.[12] *See Ex Parte Young*, 209 U.S. at 155–59.

In addition, because Ms. Linardos's claims under the Connecticut Constitution "raise[] a novel or complex issue of State law," the Court declines to exercise supplemental jurisdiction over these claims, and any amendment would be futile. *See* 28 U.S.C. § 1367(c).

Moreover, sovereign immunity bars Ms. Linardos's claims in Count Four under Conn. Gen. Stat. § 31–51q against DPH, though this claim may be brought in state court. *See Cook*, 1998 WL 91066, at *6 ("There is no support for the contention that by the enactment of Conn. Gen.Stat. § 31–51q the state intended to waive its Eleventh Amendment immunity from suit in federal court. . . . For these reasons, the court concludes that Cook's claims against the defendants in their official capacities are barred by the Eleventh Amendment."). The Individual Defendants likewise cannot be sued in their individual capacities under the statute. *See id.* (Conn. Gen.Stat. § 31–51q "claim must be dismissed against the defendants in their individual capacities because only an employer may be subject to liability under this statute."). As a result, any amendment of Ms. Linardos's claims in Count Four would be futile.

---

[12] If Ms. Linardos brings claims against the individual Defendants in their official capacities, she still may only seek damages against the individual Defendants in their individual, rather than official capacities under both Section 1983 and state law. *Spencer*, 139 F.3d at 111 ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." (citation omitted)); *Pennhurst*, 465 U.S. at 121 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

Finally, Ms. Linardos cannot assert a procedural due process "stigma-plus" claim or state law claims for defamation or false light invasion of privacy on the basis of Ms. Plyler's March 16, 2022 letter, *see* Compl. ¶¶ 66–67, because the statements made there did not make an accusation, false or otherwise, regarding Ms. Linardos. *See Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 WL 12651264, at *14 (D. Conn. Sept. 30, 2014) ("Where the defamatory statement is not made about the plaintiff, the defamation claim must fail." (quoting *QSP, Inc.*, 773 A.2d at 916)); *Leichter v*, 917 F. Supp. 2d at 190 (concluding "email informing staff that the Plaintiff was placed on administrative leave while district operations were reviewed and instructing staff to refrain from communicating with the Plaintiff while he was on leave. . . [was] not the type of false reputation-tarnishing statements sufficient to support a stigma-plus due process claim"). As a result, leave to amend to include a stigma-plus, defamation, or false light invasion of privacy claim based on this statement would be futile.

Accordingly, leave to amend is denied as futile for Ms. Linardos's Section 1983 claims against DPH, her claims under the Connecticut Constitution Article One, Sections One and Four, her claims under Conn. Gen.Stat. § 31–51q,[13] and her stigma-plus defamation and false light invasion of privacy claims based on the statements in Ms. Plyler's March 16, 2022 letter.

Ms. Linardos may, however, seek leave to amend her Section 1983 claims against the individual Defendants, including any claim seeking equitable relief against the individual Defendants in their official capacities. She likewise may seek leave to amend her stigma-plus, defamation, and false light invasion of privacy claims to the extent any such claim may be

---

[13] This dismissal of Ms. Linardos's state law claims for lack of jurisdiction does not, however, bar Ms. Linardos from pursuing these claims in state court. *See* Conn. Gen. Stat. § 52-592(a) ("If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . because the action has been dismissed for want of jurisdiction, . . ., the plaintiff, . . ., may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.")

brought based on statements other than Ms. Plyler's March 16, 2022 letter and pled with specificity. *See Fraser*, 2022 WL 4367576, at *6 ("A claim of defamation must be pleaded with specificity[.]"); *Light*, 2024 WL 1199717, at *9 ("A plaintiff bears the burden to prove the content of specific statements that form the basis for a false light claim.").

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

The motion to dismiss Count Three against Ms. Plyler is **DENIED**.

The motion to dismiss Counts Two, Four, Five and Six as to all Defendants, and Count One in part is **GRANTED**.

Ms. Linardos's claims against DPH in Counts One, Two, Five, and Six are **DISMISSED** without leave to amend but without prejudice for lack of jurisdiction.

Ms. Linardos's claims against the individual Defendants in Counts Two, Five and Six are **DISMISSED** without leave to amend as to stigma-plus, defamation, or false light invasion of privacy claims related to the March 16, 2022 letter from Ms. Plyler, but with leave to amend as to any other claims.

Ms. Linardos's Connecticut constitution claims in Count One and Section 31-51q claims in Count Four are **DISMISSED** without leave to amend for lack of jurisdiction, but without prejudice to bringing the claims in state court.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, consistent with this Ruling and Order, a motion for leave to file an Amended Complaint must be filed by **April 25, 2025.** If a motion for leave to file an Amended Complaint is not filed by **April**

**25, 2025,** the current Complaint, consistent with this Ruling and Order, shall be the operative pleading for this case.

      **SO ORDERED** at New Haven, Connecticut, this 21st day of March, 2025.

/s/ Victor A. Bolden       
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
